This first case is 4-15-0242 and 4-15-0243 and re the Marriage, is it Rade or Rady? Rady. Great, thank you. Appearing for the Appellant is Attorney Randy Passwater and for the Appellee is Attorney Daniel, is it Hasinger? Hasinger. Hasinger, thank you. All right, Mr. Passwater, are you ready to proceed? I am. You may. You may please the court. My name is Randy Passwater. I'm the Attorney for the Appellant in this case, Crystal Rade. Crystal is in the audience today with me. This case primarily is here before you in relation to removal issues. The majority of my comments this morning will be addressed to removal and the application of the Eckerd factors, and that's where I think the focus is and is the purpose of this appeal. Very simply, in this case, the trial court didn't issue a ruling that was against the manifest way of the evidence. The court didn't engage in a careful and balanced decision. The trial court essentially found against my client on every single factor under the Eckerd findings. In doing so, it is clear from that decision the trial court wasn't applying the facts of the case, but was doing something else. Counsel, I have a question for you. Wouldn't you agree that the analysis was somewhat shaped by the fact that your client had a credibility problem with the court? Absolutely. That's a very central issue that the trial court, in my opinion, took that credibility determination and overused it as substantive evidence in the case to essentially throw the baby out of the bathwater, essentially not apply the facts and look at the actual evidence that was before the court. I think that's why this case is here before this court, that the decision was in some respects an emotional response as opposed to an actual analysis of what the facts are. This is a case of a woman who had almost no nexus to the state of Illinois. She lived in the state of Illinois for a little over two years at the time of the divorce. But she did choose to come to the state of Illinois, marry an individual, have her child in the state of Illinois, correct? That is absolutely correct. I can't dispute that and have no desire to dispute that fact. She made a decision that she thought this marriage was going to work out, but like a lot of people found out very quickly when she had children, that the fairy tale didn't meet the facts, that this wasn't the gentleman that she met and had a child with. It's a very short relationship that resulted in a child. They've been dating just a few months. He was getting out of the service and his family was here in Illinois, and so for her to try to have a family with him, that almost necessitated her to come to Illinois if she wanted to live the fairy tale, so to speak. When she got here, the fairy tale blew up. It was a relationship that was very one-sided. I don't think that the trial court really looked at the fact that this is a classic dependent relationship. One spouse worked, one didn't. One stayed home and relied almost entirely on her husband for money and finances. She's incredibly dependent, and as a result of that dependence, maybe some things that another case might not raise as major issues. For her, she was scared of this guy. She was terrified he was going to cut off her access to her newborn child, just an infant at the time of this. And that, to me, sort of went out the door once we went through a hearing and it became an issue of the bomb squad testifying, and whether this grenade was inert, and things of that nature. And I think the court just got lost in some of those more grandiose issues and didn't look at the actual realities of a normal case of recurring facts of a dependent relationship with a spouse who's scared. And that's what really was going on in the case. That was really the evidence that was before the court. And she just wanted to go home, where she was from, where all her contacts were, Florida. With the new act that amends the Dissolution of Marriage Act, 609 is going to be gone. We're going to go to 609.2, in which someone from Chicago, for instance, who moves to Illinois to go for school, if they have a child under that new statute, you're going to have these cases, these removal cases. Even somebody who has a very limited contact to the University of Illinois has a kid, they can be there 6, 8, 9 months, 10 months with that child, and all of a sudden they're going to be in the trial court litigating these issues. I think this panel is very familiar with removal issues. They come before the court an awful lot, they're incredibly emotional, and they're very difficult for the trial court. I've tried a number of these cases, and trial courts are reluctant to grant these motions because of the emotion, because you have a lot of times a dad saying, I don't want my child to go far away from me. That's a very sympathetic position, and I don't want to minimize that at all. Counsel, let me ask you this. I asked you about the credibility issue. You're asking us, we didn't see the witnesses, we didn't hear what they had to say, we've got a cold record, and you're asking us as the appellate court to say, this judge got it wrong, who sat there and observed these witnesses, and all the other witnesses. Is that our function? Judge, and I appreciate that question, because I think that's the difficult standard that I have before you. And what I've tried to do is stay away from credibility determinations. I haven't really argued in this brief that this witness is more credible than the other. What I've said is, here are four or five facts that are completely undisputed. The husband in this case, his statements, his own testimony and evidence, irrespective of any credibility issue, his text messages are, the only way I know how to not feel depressed is to drink. That's in front of the judge, and he threw it out. Ignore it. The pictures in the house are empty liquor bottles, guns, weapons. There's not any dispute that he smashed furniture and is having angry outbursts. That's his own testimony. Well, isn't that disputed? I mean, if I'm recalling correctly, you know, the liquor bottles, of course, we don't have any evidence that he, the father was indicating he dropped this table versus smashed the table. There was evidence regarding that both of them consumed alcohol, and there was evidence regarding your client allegedly putting false information in a request for an order of protection, an amended request for an order of protection, and that seemed to go quite a bit to the court's finding that your client would not facilitate the relationship between the father and the child. I agree. Those are the findings of the trial court, but what I'm asking this appellate court to do is actually look at the substance of those events. The issue of the smashed table, for instance. We have a contemporaneous text message from Adam Ray that day saying, I'm sorry that I get so angry. I blow up like I do now. That's his own words, his own admissions, and the trial court says, well, we're not going to believe his own admissions because she gave some other statements that are contradicted. I don't think that's the issue that I have on this appeal. Crystal Ray may have made some statements that she couldn't substantiate, but at the end of the day, she presented a lot of facts that would suggest this wasn't just someone who was making this up out of whole cloth. A lot of these domestic violence type cases are credibility determinations. He said, she said, and I appreciate that the court's saying, look, why are we going to substitute, but I'm not asking the court to do that. I'm looking at this judge basically said, I find her incredible and threw everything else out. He didn't look at it, and I don't think that's the way it should have been done. I think that what that does is essentially show the passion and prejudice of the trial court, and if this court doesn't look at it and just says, throw our hands up, it's a credibility determination. You know, a trial court could simply say it's a credibility determination in every single case, and we never look at it. Well, let me ask you this, because then we move to whether or not your client presented enough evidence to carry her burden to show the removal. That is the issue, and here's my response to that. It's a two-year nexus to the state of Illinois. She works at home. She doesn't know a lot of people here. She doesn't have a lot of contacts here. She didn't work outside the home. The trial court seemed to present that she was supposed to say, well, economically, the environment in Florida is so much better than here. What does she know about the economics of Illinois? She didn't apply for a job. She was sitting at home. She's supposed to just present a bunch of speculation as to what Illinois is like. When we tried this case in October, she was in school. She didn't have the ability to even have a job in her own career. So, that's the issue as it relates to that nexus. What evidence was she supposed to permit? And indeed, what evidence would anyone in her situation have when she has just a very limited amount of time in the forum state, so to speak? She simply didn't have a lot, but she did have, hey, look, here's what I'm like in Florida, where I'm from, where I have contacts, where my family is, where my family can watch my child. It's a two-year marriage. You'll note that in the divorce case, she didn't receive any maintenance. The only income that she has is child support. And the trial court's ruling is that she is going to be out of the house. So, we're basically saying, okay, here in Illinois, you don't have a marital residence, you have no maintenance, and you've got to go find a job, and she doesn't have any real relationship to Illinois or any experience with job in Illinois. I cited the court to the case of Bannister v. Partridge. I know at least two of the justices were on that panel, and I argued that case. But I think Bannister, the appellate court, correctly determined and made the decision that you have to look at what's it like if the court denies the removal to the custodial parent. Here, if you deny the removal, Crystal Ray is sitting there with no marital residence, $700 and some odd dollars in child support, no job, and responsibility under the court's order, which the trial court correctly found that she was the custodial parent. It is in the best interest of this child that she maintain custody of this child. What's that like? What's that environment like? That's a bad environment. And alternatively, she said to the court, it's a very short duration marriage. I'm not asking for maintenance. I just want to go home where I can resume potentially the career that I've already had. She works down there. Indeed, on the motion to reconsider, to reopen the evidence that I filed with the court, resented evidence of the actual job opportunity. We're making $15 an hour with babysitting. It's a great opportunity. That's the second issue on appeal. I can get to that later, but I think I want to focus on the removal. Very simply, we talk about the likelihood of improving the quality of life. The trial court under this court's decision in Parr, this court's decision in Bannister v. Partridge, and the Supreme Court's case in Hollingworth, says we've got to consider the custodial parent's quality of life. And the trial court found no evidence of quality of life would be improved by Florida. That's what the trial court found. That, to me, is a very incredible ascertainment of fact. Because under the facts of this case, you have somebody who, all of her ties in life, with the exception of the short period she spent here in Illinois and her son's family members, is in Florida. This child had been to Florida to visit these family members. This child has relationships with mom's parents. And the trial court focused extensively on dad's family, didn't even acknowledge that these other people really exist. So that first factor, that first accurate factor, the likelihood to improve quality of life, I think the basis to say no evidence of quality of life is presented under the facts of this case. Under a different case, there might be a lot more analysis that should have occurred there. But here, where you have somebody who doesn't work, who's staying home with a young child, who's brand new to the state, she presented what the facts were. She didn't ask the court to speculate about the job market in Florida, particularly. She tried to say, look, this is what I know. I know people in Florida. I have a family in Florida. I know I can be there with no rent. I can have my child cared for by grandparents. That's in the best interest of the child, and that's what the trial court ignored. And that's why, primarily, this removal decision was contrary to the manifest way to the evidence. The second issue I'd like to address is the second factor under removal. I'd like to focus on the court's finding of bad faith. I know we touched on this a little bit, so I won't belabor the point. But, you know, again, there's not any dispute that this is a gentleman who is involved in drinking. He's drinking to some extent. The trial court wanted to focus, from a credibility standpoint or evidence standpoint, he wasn't that drunk on a particular occasion and made a finding on a video and things of that nature. But there's no dispute on that incident that he had been drinking. His mother has gone to pick him up because he had too much to drink. And the trial court simply ignores that element, that element of alcohol abuse, that element of, this is a person who's drinking and this is a mom in an unequal relationship who doesn't want to be around that father with that child while he's drinking. That's a problem. That's abuse harassment. The court shouldn't turn a blind eye to what happens in a lot of homes, what happens on a daily basis with people who are abused and in these kinds of relationships where you have substance abuse, alcohol abuse. She's saying, look, this is the situation here. She presents a lot of evidence about that situation. And this is a gentleman with access to guns, weapons, knives. He's a survivalist. He owns a bunker. He's into It wasn't a bad thing. I submit to the court that getting an emergency order of protection to have separation is something that happens all the time in courts throughout the state. And in fact, that's what the Domestic Violence Act is for, to provide some separation. The trial court, for whatever reason, didn't have a hearing. I think that some blame or some allocation of fault has to go to the respondent here. If he wanted a hearing to get visitation with his son, that the act provides very specific remedies that he could have pursued to get this issue in front of the court. I don't know why he waited a hundred and some odd days to get it to trial. But to some extent, the trial court's finding of somehow that crystal rays at fault because this order of protection drug on or that she went and got it, is a very bad precedent. It's a very bad situation in terms of, are we going to discourage people who are in these kind of dependent relationships to not go get an emergency order of protection? A question about the two cases. Was there an order consolidating the two? I've searched the record, and I don't know that there was. But they were tried that way. Certainly, that was how everybody understood that it was done. My recollection from the status conference was, let's go forward, we'll have a hearing on all issues. And that was fine. I think the point I would make, though, is that the amended statement of facts on the order of protection, those were filed also under 5501 in a petition for temporary relief. So Crystal filed a motion consolidating the exact same facts for the court to consider under that. I think the trial court placed a lot of emphasis on her pursuing relief under the emergency order of protection statute or the Domestic Violence Act. But it really was a question of, however you get there, Judge, but I want this relief. You can get there under 5501 and grant her temporary relief, but I want some separation from this individual. I don't want to be harassed, intimidated, stalked by this person, which I think is an acceptable, reasonable request. And she wanted him to get some alcohol assessment. That was really all she was asking for. And third, I want to go to Florida. That accomplishes a heck of a lot in terms of separation of the parties, any kind of fear or anxiety she might have for herself or her safety. So they were tried together, to answer your question. The court's decision was a ruling with both case captions on it. Well, and that wasn't my question, though. My question was whether or not there was an order consolidating the two. Because there then becomes an issue of whether or not the order of protection case is one that is proper for appeal here, in terms of the timeliness of the appeal. So you indicated that you had other things that you wanted to talk about, just in terms of prioritizing. And I don't want to throw you off track here, but I did have a question whether or not the order of protection case was timely appealed. If you want me to address that issue, I can go ahead. They were consolidated. The ruling and the memorandum of opinion that comes out of the hearing is in both cases. It's clearly captioned that way. Nobody who was in front of the court had any confusion as to what the issues were, in terms of that. For purposes of this, yes, there should have been an order that consolidated them, or there should have been some clarification. But I don't know why the trial court didn't do that. In terms of the specific issue of jurisdiction, since the court's raised it and has a concern, and I see I'm out of time today. Very simply, whether that order of protection is final or not, the court retained jurisdiction of the same issues in parties, and the same issues of separation in the parties, of relief under the request of 214, the relief of having a therapist. All those issues were before the court. So I don't see under 303A2, when that divorce petition is still pending, when there's still issues in that, that the trial court couldn't have addressed those issues going forward. So I don't think there was a final judgment in that, and I've briefed that, I've directed the court to that. In terms of the removal, I asked the court to reverse the trial court and grant the removal here in this case. I think that the record is fairly clear that the results that was reached by the trial court was somewhat arbitrary, and simply finding it against Crystal on all issues, I think is motivated by the passion and prejudice of the judge against her because he found she lied. In terms of the second issue, the abuse of discretion, the error of Crystal's motion to reconsider and reopen the evidence, I just asked the court to consider the following. The facts that existed at trial were that Crystal didn't work. The new evidence that she presented was, I've got a job in Florida, I can't find anything in Illinois. The facts and evidence that Crystal, at the time of trial, was in Illinois, Crystal didn't have a house. The record was, can't we do something about that? To me it seems disingenuous of the trial court to say, no, summarily deny a motion to reopen, go file a petition. And when the facts are all before the court on these issues, where it still has jurisdiction over financial issues, such as temporary maintenance pending the decision, where the facts are somewhat in transition. So I think the court abuses discretion, and that's under account too. I'd ask the appellate court to reverse and consider that. It's not a throwaway issue. I think it really is a very serious issue where the trial court's saying, yeah, go file a motion. Are we going to go have discovery and this thing's going to drag on? You just heard the facts of the case. There's two new facts that go directly to all of the issues. Let's have a hearing on that. Let's go forward and take care of this child and not have the child stuck in Illinois with no job, no place to live. That makes no sense to me. That is another major issue. I see I'm out of time. Thank you guys. All right. Thank you, Mr. Passwater. Mr. Hassinger. May it please the court, counsel. My name is Daniel Hassinger, and I represent the appellate, Adam Rade. I'd just like to start off by saying that the trial court got it right in this case. In terms of the issue of removal, the trial court very carefully considered each factor under Eckert. In its memorandum of opinion, made fact findings. Yes, there were credibility issues, and yes, they should be a determining factor when the judge is applying the facts to the law. As far as factor one goes, the appellate relies on the notion that the trial court completely ignored Crystal Rade's quality of life being enhanced by moving to the state of Florida. However, at trial she argued that she would have better job opportunities and that there was a lower crime rate. That was not supported by anything but bare assertions at trial. It did not submit any substantial empirical evidence to the court that she would have better job opportunities and that there was indeed a lower crime rate that would naturally flow through to the child. The court did, however, in regards to factor one, made a specific finding that he found her to not be credible. He found that she was motivated to move to the state of Florida to frustrate Adam Rade's visitation with his child. These two cases were tried at the same time. They were not consolidated. However, the judge did hear the evidence in the order of protection case was that Adam Rade had told Crystal Rade that he wanted a divorce and the next day she files and seeks and obtains an emergency order of protection. That emergency order of protection kept Adam Rade from seeing his son for 104 days. The facts that she alleges in her complaint for an order of protection were not true. Crystal Rade's testimony on cross-examination admitted that she put facts in there that she knew to be untrue. So yes, the trial court was very right in taking into consideration the credibility of her as a witness but also as the actual evidence that was being presented. She didn't meet her burden under any of the factors and that's why the trial court decided against her on each of the factors. When you look at the cases on removal that would support removal in a case like this, those factors are closely balanced. There aren't any cases out there where the trial court says I did not believe this witness, I found their motives to be suspect. For example, in Cullingborn, the mother, the court cited there was a monopoly of evidence of the benefits that would flow through to the child such as greater pay versus in the raw comparisons to what was going on in the person's life in Illinois. In the case of Barr, Crystal was a student that was going to obtain a dental assistant school to which she has graduated from. However, at the time of trial, a certificate was not required for her to obtain a job yet she had not sought employment in Illinois. There were no comparisons from what was going on in her life through what would happen in Florida if she were allowed to move that would give the trial court pause. The trial court did acknowledge that there would be some benefit that she would be close to her family, but that was seriously outweighed by the detrimental impact and effect that it would have on the child if removal were allowed. And I don't want to take up a bunch of time and go through each factor. You've read what the trial court's memorandum of opinion was. I think that he did a very thoughtful, careful, deliberate consideration and wrote a memorandum of opinion and decision that this court should trial court denying the motion to reconsider. The motion to reconsider was denied because it was not newly discovered evidence that was available. At the time it was just undiscovered. This is new evidence. You don't get to go to trial and lose on that issue and then go out and gather evidence to support your issue and then come back and say, but now I can meet my burden. And so I think the judge was proper in denying the motion to reconsider. The judge did know that Crystal Ray was free to file a new petition for a leave to remove the child. And that would have been the proper remedy to hear new evidence in that case. In regards to the jurisdictional issue of the order of protection being dismissed, the judge issued two distinct orders. There was an order dismissing the plenary order of protection and there was a judgment in the dissolution case. Two separate case numbers. Granted, I will concede that there is on the final order of the order of protection a notation that says, see memorandum of opinion for findings of fact as to the reasons for the dismissal. But on the face of that order itself, there are findings of fact. There's a fact that the emergency order of protection was issued and it goes through the court's determination of, see the memorandum of opinion for the factual findings relating to the order of protection and properly dismissed it. And the alternative that the court finds that Crystal did not waive a right for appeal in that case, the court properly dismissed the order of protection. The evidence was clear in the record, clear in the testimony of the witnesses, and clear in the testimony that Crystal fabricated evidence in support of her order of protection in an attempt to keep Adam Rae from his son. Those are the undisputed facts in the case. I think that the trial court got it right and I would ask the court to affirm the trial court's decision. In terms of the order of protection, the undisputed facts are Crystal is afraid of this man. The undisputed facts are that it was an abusive relationship that involved drinking and involved an unequal allocation of the rights between the parties. The result in the order of protection is a decision that is a result of the passion or prejudice of the trial court. Very simply, it didn't like what Crystal did when she filed a petition and wasn't able to support certain aspects of that petition. If you look at the actual pleading, the amended description of incidents, the only thing that she is impeached on is the things in paragraph 10. She went through in the first of her paragraphs and set out very specific, on this occasion this happened, backed it up with text messages. So she identified four or five different specific incidents on which she asked for the order of protection. Then in paragraph 10 she said, and I'm afraid of this guy. He's part of a militia. He's made threats to kill himself. She didn't support those things very well. She put and attached to that petition in that section a text message which turns out to be in relation to some national football game. The statement that Mr. Raid made, which nobody disputes, is I'm going to put myself in front of a train. Well, apparently in front of that it was in relation to National Championship. When she was confronted with that, she said, yeah, you know what, I put that in. I'm not sure why it went in. But it was in one paragraph of this. In any domestic violence type situation, you're going to have a creditability determination. It's very likely impossible that you're going to have someone who's impeached to some degree or another with statements they've made that in the heat of their fear, their anxiety, whatever was going on, they may make statements that are refuted. And that's why we have a trial. That's why we have the opportunity to cross-examine the witness. But the trial court shouldn't be allowed to simply then just toss out and entirely disregard all of the other evidence of abuse. And that's what this appeal is about. This is what the case involves. That's all I have to say. I thank you guys for your time. Thank you. The case will be taken under advisement and a written decision will issue.